IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **Case No. 3:26-cr-00020-PDW** |
| | ) | |
| Plaintiff, | ) | Hon. Peter D. Welte |
| | ) | Chief U.S. District Judge |
| v. | ) | |
| | ) | **MOTION TO SUPPRESS** |
| DEMETRIUS WILLIE JAYVON | ) | **PHOTOGRAPHIC** |
| GLENN, | ) | **IDENTIFICATION** |
| a/k/a MEECH, a/k/a T, a/k/a | ) | |
| MARCUS, | ) | |
| | | |
| Defendant. | | |

NOW COMES Defendant DEMETRIUS WILLIE JAYVON GLENN, by and through undersigned counsel, Sanford A. Schulman, and respectfully moves this Honorable Court for an Order suppressing the out-of-court photographic identification of Mr. Glenn made by cooperating witness Richard Carrillo, together with any in-court identification of Mr. Glenn by Mr. Carrillo at trial as the fruit of that suggestive procedure. In the alternative, the defense respectfully requests an evidentiary hearing pursuant to United States v. Wade, 388 U.S. 218 (1967), to develop the record concerning the procedures used in administering the array. In support of this Motion, the Defendant states as follows:

## I.  STATEMENT OF FACTS

Mr. Glenn is charged in a single-count Indictment with conspiracy to possess with intent to distribute and distribute methamphetamine and cocaine, in violation of 21 U.S.C. § 846. The Government's case-in-chief connecting Mr. Glenn to the alleged conspiracy rests overwhelmingly on the testimony of cooperator Richard Carrillo. Mr. Carrillo gave two post-arrest proffer statements (Bates Nos. RC000812, RC000991), and at one of those proffer sessions or in connection therewith was shown a six-person photographic array. (Bates Nos. RC000982–RC000989.)

Mr. Carrillo purportedly selected Mr. Glenn from that six-person array. The discovery produced to date does not disclose, in sufficient detail to permit meaningful evaluation, the procedures used in administering the array, including: who selected the filler photographs and on what criteria; the source and date of each filler photograph; whether the array was administered by a "blind" or "double-blind" administrator (i.e., an officer who did not know the identity of the suspect); the precise written or oral admonitions given to Mr. Carrillo before the array was shown; the pre-array statements made by any agent to Mr. Carrillo concerning the suspect or the investigation; the order in which the photographs were displayed (sequential or simultaneous); Mr. Carrillo's verbal and non-verbal reaction

to the array; the speed and expressed level of certainty of the selection; and whether the procedure was audio- or video-recorded.

By contemporaneous defense motion under Federal Rule of Criminal Procedure 16, the defense has requested complete documentation of the array and its administration. The defense files this Motion to Suppress conditionally, on the basis of the limited record presently available, and reserves the right to supplement the Motion upon the Government's production of additional materials and testimony at any evidentiary hearing the Court may set.

## II.  ARGUMENT

### A.  The Two-Step Inquiry Governing Photographic-Array Suppression.

"In determining whether admitting identification evidence would violate a defendant's due process rights, a court conducts a two-step inquiry. The first step is to determine whether the [photo] array was impermissibly suggestive." Schawitsch v. Burt, 491 F.3d 798, 802 (8th Cir. 2007). If the array was impermissibly suggestive, then the court considers "whether under the totality of the circumstances the array created a substantial risk of misidentification at trial." Id. "It is the likelihood of misidentification which violates a defendant's right to due process." Neil v. Biggers, 409 U.S. 188, 198 (1972).

An identification procedure is not unnecessarily suggestive "when there are no differences in appearance tending to isolate the accused's photograph." Id.; see also United States v. Mays, 822 F.2d 793, 798 (8th Cir. 1987). Likewise, a procedure is not impermissibly suggestive where the officers do not suggest that the defendant is the person depicted in a particular picture, or that the defendant engaged in wrongdoing. United States v. Omar, 786 F.3d 1104, 1108–09 (8th Cir. 2015). The defendant bears the burden, first, of establishing that the photographic spread was impermissibly suggestive, and, second, of demonstrating that under the totality of the circumstances the suggestive procedure created a very substantial likelihood of irreparable misidentification. United States v. House, No. CR 14-40005-01-KES, 2014 U.S. Dist. LEXIS 54748, at *2 (D.S.D. Apr. 12, 2014) (citing United States v. Martin, 391 F.3d 949, 952 (8th Cir. 2004)).

**B.  If a Suggestive Procedure Is Established, Reliability Is Measured Under the Biggers / Manson Factors.**

If the procedure is found to be unnecessarily suggestive, the question becomes "whether, under the totality of the circumstances, the identification was reliable even though the confrontation procedure was suggestive." Biggers, 409 U.S. at 199. "Reliability of the eyewitness identification is the linchpin" of the determination whether improper police conduct created a "substantial likelihood of misidentification." Perry v. New Hampshire, 565 U.S. 228, 238 (2012).

The reliability factors include: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Biggers, 409 U.S. at 199–200; Manson v. Brathwaite, 432 U.S. 98, 114 (1977).

### C.  The Limited Record Already Discloses Indicia of Suggestiveness, and the Reliability Factors Cut in the Defense's Favor.

First, on the limited record available to the defense, there is good reason to question whether the fillers were properly selected to match Mr. Glenn's age, race, build, hairstyle, complexion, and other distinguishing physical features, or whether the array was structured in a way that tended to isolate Mr. Glenn's photograph. The Government's discovery does not yet disclose the source, date, or selection criteria for the five filler photographs, the relative size and dress of the persons depicted, or whether any unique markings, backgrounds, lighting differences, or shading distinctions caused Mr. Glenn's photograph to stand out.

Second, the procedure was administered by an officer who, on information and belief, knew the identity of the suspect (i.e., was not a blind administrator). The Department of Justice has long recognized that blind or double-blind administration substantially reduces the risk of inadvertent suggestion. The discovery does not yet establish the protocol used here.

Third, the defense has not yet been provided with the contemporaneous written or recorded admonitions read to Mr. Carrillo, the specific instructions concerning the possibility that the suspect might not be among the photographs, the order in which the photographs were

displayed, or the verbatim statements made by Mr. Carrillo at the time of selection. Without this record, the procedure cannot be evaluated for compliance with accepted law-enforcement standards.

Fourth, the reliability factors enumerated in Biggers and Manson cut against admission. Mr. Carrillo is a cooperating co-defendant who, before the array, had given a proffer statement and had every incentive to identify a person who matched the description he had given to investigators. He is not, in the language of the cases, an arm's-length eyewitness who had a single, defined opportunity to view a stranger committing a crime; he is a self-interested cooperator describing, after his arrest, the alleged source of supply for an out-of-state distribution chain. The level-of-certainty factor in such circumstances is unreliable. The accuracy of Mr. Carrillo's prior description of Mr. Glenn, his opportunity to observe Mr. Glenn during the relevant period, his degree of attention, and the time between the alleged transactions and the array are all matters that require a Wade hearing to develop.

Fifth, while the Eighth Circuit has not squarely held that the failure to preserve the array creates a presumption of suggestiveness, see United States v. Bissonette, No. 5:14-CR-50055-JLV, 2016 U.S. Dist. LEXIS 120003, at *11–12 (D.S.D. May 2, 2016) (collecting authority), the

Government's burden to demonstrate the reliability of the procedure is not lessened by gaps in its own documentation. The Court can and should require the Government to come forward with the complete record before the testimony is admitted.

### D.  An Evidentiary Hearing Is Necessary.

Whether an identification procedure is impermissibly suggestive, and whether under the totality of the circumstances the procedure created a substantial likelihood of misidentification, are determinations that ordinarily require an evidentiary hearing where, as here, the defendant has made a substantial preliminary showing. United States v. Wade, 388 U.S. 218, 235 (1967); United States v. Donelson, 450 F.2d 696, 699–700 (D.C. Cir. 1971); see also Watkins v. Sowders, 449 U.S. 341, 349 (1981) (encouraging hearings outside the presence of the jury). The defense respectfully requests such a hearing, at which the Court can hear from the array administrator, examine the array materials and any recordings, and make reliability findings on a complete record.

### III.  RELIEF REQUESTED

WHEREFORE, the Defendant, DEMETRIUS WILLIE JAYVON GLENN, by and through his attorney, SANFORD A. SCHULMAN, respectfully requests this Honorable Court:

1.  **Setting an evidentiary hearing** pursuant to United States v. Wade, 388 U.S. 218 (1967), to determine whether the photographic array shown to Richard Carrillo was impermissibly suggestive and, if so, whether the resulting identification was reliable under the totality of the circumstances and the factors set forth in Neil v. Biggers, 409 U.S. 188 (1972), and Manson v. Brathwaite, 432 U.S. 98 (1977).

2.  **Suppressing the out-of-court photographic identification** of Mr. Glenn made by Richard Carrillo, and any in-court identification by Mr. Carrillo as the fruit of that procedure, upon a finding that the procedure was impermissibly suggestive and unreliable.

3.  **Compelling the Government,** in advance of the hearing, to produce the array as displayed; the source and selection criteria for each filler photograph; the written and oral admonitions delivered; the identity, training, and case-involvement status of the array administrator; any audio or video recording of the procedure; and the agent's contemporaneous notes of Mr. Carrillo's reaction, statements, and stated level of certainty.

## IV.  CONCLUSION

WHEREFORE, Defendant respectfully requests that this Honorable

Court grant this Motion and enter an order consistent with the relief

requested above.


Respectfully submitted,


/s/ Sanford A. Schulman
SANFORD A. SCHULMAN
Admitted Pro Hac Vice
Federal Criminal Attorneys of Michigan
500 Griswold Street, Suite 2340
Detroit, Michigan 48226
Telephone: (313) 963-4740
Email: saschulman@comcast.net
Counsel for Defendant Demetrius Willie
Jayvon Glenn

Date:  June 11, 2026

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date set forth below, I electronically filed the foregoing Defendant's Motion to Suppress Photographic Identification with the Clerk of the United States District Court for the District of North Dakota using the CM/ECF system, which will send notification of such filing to all counsel of record, including Matthew P. Kopp, Assistant United States Attorney, District of North Dakota, 655 First Avenue North, Suite 250, Fargo, North Dakota 58102.

Respectfully submitted,

<u>/s/ Sanford A. Schulman</u>
SANFORD A. SCHULMAN
Admitted Pro Hac Vice
Federal Criminal Attorneys of Michigan
500 Griswold Street, Suite 2340
Detroit, Michigan 48226
Telephone: (313) 963-4740
Email: saschulman@comcast.net
Counsel for Defendant Demetrius Willie Jayvon Glenn

Date:  June 11, 2026